# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

LESLIE-BURL McLEMORE;                                    **PLAINTIFFS**
CHARLES HOLMES;
JIMMIE ROBINSON, SR.; and
RODERICK WOULLARD

VS.                                    CIVIL ACTION NO. 3:19-cv-383-DPJ-FKB

DELBERT HOSEMANN, in his official capacity                **DEFENDANTS**
as the Mississippi Secretary of State; and PHILIP
GUNN, in his official capacity as the Speaker of the
Mississippi House of Representatives

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
JURISDICTION AND IMMUNITY FILED BY THE SPEAKER OF THE MISSISSIPPI
HOUSE OF REPRESENTATIVES AND THE MISSISSIPPI SECRETARY OF STATE**

---

William Trey Jones, III (MSB #99185)
Cody C. Bailey (MSB #103718)
Jacob A. Bradley (MSB #105541)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
Email: cbailey@brunini.com

*Counsel for Defendants Philip Gunn, in his
official capacity as the Speaker of the
Mississippi House of Representatives, and
Delbert Hosemann, in his official capacity as
the Mississippi Secretary of State*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL ALLEGATIONS ................................................................................................3

ARGUMENT .........................................................................................................................5

I.    The Court Should Dismiss this Action under Rule 12(b)(1) for Lack of Subject
      Matter Jurisdiction because there is No Justiciable Case or Controversy:
      Plaintiffs Lack Constitutional Standing; the Case is Not Ripe; and Plaintiffs Ask
      the Court to Resolve a Political Question. ............................................................................5

      A.    Plaintiffs Do Not Allege Facts to Establish Constitutional Standing. ....................6

            1.    Plaintiffs have not alleged facts to establish an injury in fact.....................8

            2.    There is no causal connection between Plaintiffs' alleged injuries
                  and the Secretary's or Speaker's conduct. ..................................................15

            3.    Plaintiffs' injuries are merely speculative, and it is not likely that
                  they will be redressed by the relief requested from the Court. .................16

      B.    The Court Should Dismiss this Action because it is Not Ripe. .............................17

      C.    Plaintiffs' Claims with Regard to the "Electoral Vote Rule" Amount to
            Nonjusticiable Political Questions. .......................................................................20

II.   The Court Should Dismiss this Action, including Plaintiffs' Voting Rights Act
      claims, under Rule 12(b)(6) and the Doctrine of Prudential Standing. ...........................21

III.  The Court Should Dismiss the Action Under Rules 12(b)(1) and 12(b)(7) because
      the Speaker and Secretary are not Proper Defendants and are Immune From this
      Suit, and because Plaintiffs Failed to Join the Mississippi Attorney General as a
      Necessary Party; Alternatively, the Court Should Dismiss the Speaker and
      Secretary and join the Attorney General...........................................................................24

CONCLUSION....................................................................................................................26

# INTRODUCTION

Even if Plaintiffs' allegations that the challenged constitutional provisions were enacted with racial animus are true, those allegations are alone insufficient to establish a justiciable case or controversy to invoke this Court's jurisdiction. Plaintiffs' allegations of injury arising from those constitutional provisions rest entirely on generalized grievances, remote hypotheticals, and speculation. Plaintiffs do not allege facts to show that they have suffered any actual injury or that any such injury is "certainly impending" to occur in the future. In nearly 130 years, the constitutional provisions at issue have never been applied to deprive an "African-American-preferred candidate" of statewide office. And the one time they all three were implicated, it benefitted the Democrat, which Plaintiffs now allege is the "African-American-preferred candidate."

Defendants Philip Gunn, in his official capacity as the Speaker of the Mississippi House of Representatives (the "Speaker"), and Delbert Hosemann, in his official capacity as the Mississippi Secretary of State (the "Secretary"), file their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). The Court should dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs lack constitutional standing, the case is not ripe, and Plaintiffs' claims are nonjusticiable political questions. The Court should dismiss this action under Rule 12(b)(6) and the doctrine of prudential standing because the Complaint does not sufficiently allege how the challenged provisions have impacted Plaintiffs in a discriminatory manner under Section 2 of the Voting Rights Act or otherwise. Finally, the Court should dismiss this action under Rules 12(b)(1) and 12(b)(7) because the Speaker and Secretary are not proper parties to defend Plaintiffs' claims, they are immune from this suit, and Plaintiffs failed to join the Attorney General as defendant. In the alternative, the Court should dismiss the Speaker and Secretary and join the Attorney General.

Neither the Speaker nor the Secretary wish to defend the motivations behind a law allegedly enacted with racial animus. However, both the allegations in the Complaint and the timing of its filing demonstrate that this lawsuit is not about race, and it is not about vindicating alleged wrongs to Plaintiffs' rights to vote—it's about partisan politics. As shown below, "the fundamental problem with the plaintiffs' case as presented" is that it "is a case about group political interests, not individual legal rights." *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018).[1] The federal courts are "not responsible for vindicating generalized partisan preferences" and are not concerned with the "fortunes of political parties." *Id.* Rather, the "Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Id.*

The jurisdiction of federal courts is limited to actual "Cases" and "Controversies." U.S. CONST. art. III, § 2.[2] "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Plaintiffs "bear[] the burden of proof" to establish jurisdiction over a justiciable case or controversy. *Choice, Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012). "'Without jurisdiction the court cannot proceed at all in any cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 U.S. 506, 514 (1868)).

While Plaintiffs' Complaint may stir a desire to right the wrongs of history, it does not set forth facts necessary to establish a justiciable case or controversy. "'Failure of political will does

---

[1] It is widely reported that this lawsuit is supported and funded by the National Redistricting Foundation, an affiliate of an anti-gerrymandering group led by former Attorney General Eric Holder. *See, e.g.*, https://thedailybreakingnews.com/lawsuit-accuses-mississippi-election-system-of-diminishing-african-american-vote/.

[2] "As this Court has explained, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341–42 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976))).

not justify unconstitutional remedies.'" *Gill*, 138 S. Ct. at 1929 (quoting *Clinton v. City of New York*, 524 U.S. 417, 449 (1998) (Kennedy, J., concurring)). "Our power as judges to 'say what the law is,' rests not on the default of politically accountable officers, but is instead grounded in and limited by the necessity of resolving, according to legal principles, a plaintiff's particular claim of legal right." *Id.* (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). Plaintiffs allege no facts to demonstrate a concrete, particularized, actual, and imminent injury to their individual voting rights, that is fairly traceable to the actions of the Speaker and Secretary, and which is likely to be redressed by injunctive relief from this Court. Nor do Plaintiffs allege facts to show that the case is ripe for the Court's consideration. Instead, Plaintiffs ask the Court to resolve a political question. Accordingly, and for additional reasons discussed below, the Court lacks jurisdiction and should dismiss this action.

The Court should also dismiss this action because the Speaker and Secretary are not proper defendants; instead, the Attorney General should be defending Plaintiffs' claims.

## FACTUAL ALLEGATIONS

Plaintiffs seek to declare unconstitutional and enjoin enforcement of Sections 140, 141, and 143 of the Mississippi Constitution of 1890 (the so-called "Challenged Provisions"), each of which relate to the State's procedures for electing the governor and other statewide officers. Doc. 1 at 32.[3] Plaintiffs challenge two requirements of Section 140 of the Mississippi Constitution:  to be elected, a candidate for statewide office must win "a majority of the popular vote" (the "Popular Vote Rule"); and the candidate must also win "a majority of all the electoral votes"

---

[3] Plaintiffs have also filed a Motion for Preliminary Injunction [Doc. 8] and Memorandum in Support [Doc. 9], in which they request that the Court not only enjoin Sections 140, 141, and 143 but also order the Speaker and Secretary to declare as the winner of each contest for statewide office the candidate who received the highest number of votes in an election. Doc. 9 at 3, 24–25.

represented by the districts of the Mississippi House of Representatives (the "Electoral Vote Rule").[4] Plaintiffs also challenge the provision in Section 141 of the Mississippi Constitution which states that if a candidate does not win both a majority of the popular vote and a majority of the electoral vote, then the members of the House of Representatives "shall proceed to choose . . . from the two persons who shall have received the highest number of popular votes" (the "House Vote Rule").[5]

Plaintiff Leslie-Burl McLemore resides in DeSoto County and votes in Mississippi House of Representatives District 25, "which is heavily concentrated with white voters." *Id.* at ¶19. Plaintiff Charles Holmes resides in Hinds County and votes in House District 69, "which is a majority African-American district." *Id.* at ¶20. Plaintiff Jimmie Robinson, Sr. resides in Hinds County and votes in House District 70, "which is a majority African-American district." *Id.* at ¶21. And Plaintiff Roderick Woullard resides in Forrest County and votes in House District 103, "which is a majority African-American district." *Id.* at ¶19–22. Each Plaintiff alleges generally that the Challenged Provisions diluted his vote in past statewide elections and made it more difficult "to elect his candidate of choice." *Id.* Plaintiffs do not, however, identify how they were injured or who their "candidates of choice" were in those past elections; they do not identify

---

[4] Arizona, Georgia, and Vermont have a similar "Popular Vote Rule" requirement. And Vermont, like Mississippi, requires the legislature to elect the winner in absence of a candidate receiving the majority vote. Further, it cannot be disputed that a majority of states require their legislatures to elect the winner in the event no candidate receives a plurality of the popular vote. In other words, there is nothing unusual about having a state legislature involved in deciding statewide elections.

[5] Sections 140 and 141 mention only election of the governor. Plaintiffs also challenge Section 143 because it applies Sections 140 and 141 to the elections of "all other state officers."

whether they voted Democrat or Republican in those elections; and they do not plead facts to

show how the Challenged Provisions made it more difficult to elect their preferred candidates.[6]

In the Complaint, each Plaintiff identifies himself as an "African-American citizen of the

United States" generally supporting election of "African-American-preferred candidates," as

opposed to what Plaintiffs describe as "white-preferred candidates." *See* Doc. 1 at ¶19–22, 38–

55. Plaintiffs allege that "[v]oting in Mississippi is highly racially polarized, with the vast

majority of white voters preferring Republican candidates, and the vast majority of African-

American voters preferring Democratic candidates."[7] *Id.* at ¶39. Plaintiffs do not allege whether

they have historically voted for Democrats or Republicans, and Plaintiffs do not allege whether

they plan to vote for a Democrat, Republican, or some other candidate in the approaching 2019

general election in Mississippi. Plaintiffs do not state who their candidates of choice are for the

2019 general election, to what political party their candidates of choice belong, or how their vote

for those candidates will be diluted absent Court intervention.

## ARGUMENT

I.    **The Court Should Dismiss this Action under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction because there is No Justiciable Case or Controversy: Plaintiffs Lack Constitutional Standing; the Case is Not Ripe; and Plaintiffs Ask the Court to Resolve a Political Question.**

"The justiciability doctrines of standing, mootness, political question, and ripeness 'all

originate in Article III's 'case' or 'controversy' language.'" *Choice*, 691 F.3d at 715 (quoting

---

[6] Since 1890, Mississippi has elected 28 Democratic governors and 3 Republican governors.

[7] Plaintiffs' allegations are based on the partisan (and offensive) stereotype that "African-Americans" vote alike for Democrats and "white people" vote alike for Republicans. As discussed below, courts do not have jurisdiction where, as here, the Court must guess how individuals might vote in the future based on stereotypes and assumptions. In addition, it is notable that Plaintiffs cite the 2015 gubernatorial race involving relatively unknown Democratic Party candidate Robert Gray (who admitted he did not even vote for himself) to support their allegations of generalized injury and partisan voting stereotypes.

*DaimlerChrysler Corp.*, 547 U.S. at 341-42); *Shields v. Norton*, 289 F.3d 832, 834–35 (5th Cir. 2002).[8] Here, Plaintiffs have failed to allege facts sufficient to establish standing and ripeness. Moreover, Plaintiffs ask the Court to resolve a political question. Accordingly, there is not a justiciable case or controversy over which this Court should exercise jurisdiction.

**A.      Plaintiffs Do Not Allege Facts to Establish Constitutional Standing.**

As discussed below, courts consistently hold that plaintiffs asserting constitutional challenges and voting rights claims must allege facts showing a concrete, particularized, actual, and imminent injury that is caused by the named defendants and likely to be redressed by the requested action from the court. *See Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) (Fifth Circuit recently reiterated these standing requirements, reversed the preliminary injunction, and dismissed plaintiffs' constitutional claims for lack of jurisdiction without reaching the merits). "[A] plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has 'a personal stake in the outcome,' distinct from a 'generally available grievance about government.'" *Gill*, 138 S. Ct. at 1923 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962) and *Lance v. Coffman*, 549 U.S. 437, 439 (2007)).[9] "To ensure that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society,' a plaintiff may not invoke federal-court jurisdiction unless he can show 'a personal stake in the outcome of the controversy.'" *Id.* at 1929 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984) and *Baker*, 369 U.S. at 204). Here, Plaintiffs' grievances are general in nature and relate only to the alleged inability of African-Americans to elect "African-American-preferred candidates." Doc. 1

---

[8] "Relaxation of standing requirements is directly related to the expansion of judicial power." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408-09 (2013) (internal quotation marks and citation omitted).

[9] The "issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006); *see Cannimore v. Disability Rights Miss., Inc.*, 2019 WL 136996, at *2 (S.D. Miss. Jan. 7, 2019) (Rule 12(b)(1) applies to constitutional standing, Rule 12(b)6) applies to prudential standing).

at 12–17, 28–32. Plaintiffs lack standing because they have failed to "'alleg[e] such a personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf.'" *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650–51 (2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

The Supreme Court has established that "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quotations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (quotations, brackets, and ellipses omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.*[10] "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiffs have failed to allege facts demonstrating standing for the three claims at issue. The United States Supreme Court has repeatedly made "clear 'that standing is not dispensed in gross.'" *Town of Chester*, 137 S. Ct. at 1650 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks

---

[10] "To cross the standing threshold, the litigant must explain how the elements essential to standing are met." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Standing "'in no way depends on the merits' of the claim." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

to press and for each form of relief that is sought.'" *Id.* Plaintiffs allege (1) the Challenged Provisions collectively dilute African-American voting strength in elections for statewide office; (2) the Electoral Vote Rule violates the one-person, one-vote principle; and (3) the Challenged Provisions violate Section 2 of the Voting Rights Act. As shown below, Plaintiffs do not have standing for their claims.

### 1. Plaintiffs have not alleged facts to establish an injury in fact.

Foremost among the standing requirements is injury in fact. "We have made it clear time and time again that an injury in fact must be both concrete and particularized." *Spokeo*, 136 S. Ct. at 1548 (citing, among others, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). In other words, to be concrete, the injury must be "'real,' and not 'abstract.'" *Id.* (citations to dictionaries omitted). On the other hand, to be "particularized" the "injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. "We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Id.* at 573–74.

Next, the injury must be "actual or imminent, not conjectural or hypothetical." *Id.* at 560–61. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The threat of future injury "must be both real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). In other words, to demonstrate an "imminent" injury, "'plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Moore v. Bryant*, 205 F. Supp. 3d 834,

851 (S.D. Miss. 2016) (quoting *Lyons*, 461 U.S. at 101–02). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* (quoting *Lujan*, 504 U.S. at 656 n.2).[11]

"[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)). This threshold question of injury "turns on effect, not intent, and requires a showing of a burden on the plaintiffs' votes that is 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Gill*, 138 S. Ct. at 1932 (quoting *Lujan*, 504 U.S. at 560). "The right to vote is 'individual and personal in nature,' and 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964) and *Baker*, 369 U.S. at 206). Plaintiffs simply do not allege facts to show that their individual votes have been harmed by the Challenged Provisions. Rather, Plaintiffs seek relief that "no more directly and tangibly benefits [them] than it does the public at large," which "does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. Plaintiffs allege mere generalized grievances based on speculative, future events that are not "certainly impending." *Id.* at 564 n.2.

In Count I, Plaintiffs allege the "Challenged Provisions have effectively diluted African-American votes and ensured that African Americans have less opportunity to elect their preferred candidates." Doc. 1 at ¶101. That allegation is the epitome of a generalized grievance over which

---

[11] The injury-in-fact prong "has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time." *Id.* "These are primarily future injuries, which 'may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Dept. of Commerce v. New York*, No. 18-966, 2019 WL 2619473, *7 (U.S. June 27, 2019) (quoting *Susan B. Anthony List*, 573 U. S. at 158).

the Court lacks jurisdiction. In Count II, Plaintiffs allege the "Electoral Vote Rule" violates the one-person, one-vote principle by discarding all votes cast in each legislative district for candidates who fail to obtain a majority of votes in that district; by diluting the votes cast in each legislative district for candidates who obtain the majority of votes in that district; and by assigning unequal weight to the votes of Mississippians depending on the legislative district in which they reside." *Id.* at ¶106. That is nothing more than a partisan gerrymandering claim over which the Court has no jurisdiction. *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2493–2502 (2019). In Count III, Plaintiffs allege that the "Challenged Provisions dilute votes cast by African Americans and minimize the influence of African-American votes in elections for statewide offices, all of which denies African Americans an equal opportunity to participate in the political process and elect their preferred candidates." Doc. 1 at ¶111. Again, Plaintiffs set forth zero factual allegations to support concrete, particularized injuries to Plaintiffs.

Popular Vote Rule

With regard to the "Popular Vote Rule," Plaintiffs allege it "ensures that, in the event that the candidate supported by African-American voters [the Democrat] wins a plurality, but not a majority, of the vote, the election is decided by the House of Representatives . . . ." *Id.* at ¶43.[12] Plaintiffs allege they might be injured if an African-American-preferred candidate receives a plurality of the popular vote but is otherwise excluded from office by the Challenged Provisions. Plaintiffs allege no facts to demonstrate such has ever happened in the past or might certainly

---

[12] On its face, there is nothing extraordinary or unconstitutional about an election process which provides that the candidate who receives the majority of votes wins the election. To insist that the process is unconstitutional because it does not allow a particular party supported by a particular minority to win an election shows the purely partisan nature of this case.

happen in the immediate future.[13] To the contrary, it is indisputable that neither the "Popular Vote Rule" nor any of the Challenged Provisions have ever prevented a statewide candidate for office who has received a plurality of the vote from actually taking office. *See, e.g.*, Emily Wagster Pettus and David A. Lieb, *Lawsuit calls Mississippi's way of choosing governors racist*, AP News, May 30, 2019 ("To date, no Mississippi candidate who won the most votes for a statewide office has been prevented from taking office because of the other requirements.")[14] Plaintiffs' insinuation that such might happen in 2019 is conjecture. The conclusory allegation that the Popular Vote Rule "make[s] it more difficult for African-American-preferred candidates to win elections for statewide, state-level office" is insufficient to demonstrate injury in fact.[15]

Electoral Vote Rule

With regard to the "Electoral Vote Rule," Plaintiffs allege that it "hinders African Americans' ability to elect candidates of their choice because it creates a system in which white-preferred candidates can win a majority of House districts with a smaller percentage of the statewide popular vote than would be required of an African-American-preferred candidate." Doc. 1 at ¶38. Plaintiffs allege that "because of the geographic and electoral concentration of the racial groups among the House districts, African Americans' candidates of choice must obtain a significantly larger share of the statewide population in order to win a majority of House

---

[13] "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564. Plaintiffs do not allege facts to show that in the past they were injured by the Popular Vote Rule. And any argument that they might be so injured in the future is speculative and hypothetical.

[14] "The district court . . . has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice*, 691 F.3d at 715.

[15] Plaintiffs do not even set forth allegations regarding which candidate they each individually intend to support in the 2019 general election.

districts, as compared to candidates preferred by white voters." *Id.* at ¶39–41. Plaintiffs allege that under the "Electoral Vote Rule," the "influence of a person's vote in a statewide race is confined to the boundaries of her House district." *Id.* at ¶48. Plaintiffs' challenge of the "Electoral Vote Rule," therefore, amounts to nothing more than a partisan gerrymandering challenge to the districts drawn for the Mississippi House of Representatives as a whole, a challenge expressly prohibited by the Supreme Court. *See Rucho*, 139 S. Ct. at 2493–2502. And Plaintiffs again allege only generalized grievances and fail to allege facts to set forth any concrete, particularized, actual, and imminent injury to their individual voting rights.[16]

In *Gill v. Whitford*, prior to the United States Supreme Court's ruling in *Rucho*, twelve Wisconsin voters alleged the districting plan by which Wisconsin elected members of its legislature was unconstitutional. 138 S. Ct. at 1923–24.[17] Much like this case, plaintiffs there generally identified as "supporters of the public policies espoused by the Democratic Party and of Democratic Party candidates," that the challenged law "unfairly favor[ed] Republican voters and candidates," and that Democrats *statewide* "do not have the same opportunity provided to Republicans to elect representatives of their choice . . . ." *Id.* The Court ruled that plaintiffs did not have standing to bring a *statewide* claim that extended beyond the "makeup of the legislative districts in which they vote." *Id.* As in *Gill*, "[t]o the extent the plaintiffs' alleged harm is the dilution of their votes, that injury is district specific." *Id.* at 1930; *see also Rucho*, 139 S. Ct. at 2492 (noting that in *Gill* the Court "held that a plaintiff asserting a partisan gerrymandering claim based on a theory of vote dilution must establish standing by showing he lives in an

---

[16] Clearly, an electoral scheme where the people elect delegates to vote on their behalf is otherwise legitimate under the United States Constitution. *See* U.S. Const. art. II, § 1.

[17] In *Gill*, plaintiffs complained of "wasted" votes across all legislative districts due to "packing" and "cracking" districts through gerrymandering. *Id.* at 1924, 1932–33. That is essentially Plaintiffs' claim in this case with regard to the "Electoral Vote Rule." *See* Doc. 1 at 12–14, 15–17.

allegedly 'cracked' or 'packed' district"). Here, Plaintiffs' allegations relate only to generalized, statewide harm allegedly caused by voting districts drawn for the House of Representatives as a whole. Plaintiffs allege no facts to show that they live in "cracked" or "packed" districts. Thus, the Court should not allow Plaintiffs to pursue this "case about group political interests" because Plaintiffs do not allege the abridgment of any individual legal rights and the Court is "not responsible for vindicating generalized partisan preferences." *Id.*[18]

<u>House Vote Rule</u>

Finally, with regard to the "House Vote Rule," Plaintiffs allege it "thwarts the election of an African-American-preferred candidate by removing the selection of candidates for statewide office from the hands of the electorate and places the decision with the House, where African Americans have little influence." Doc. 1 at ¶45. It cannot be disputed that this "tiebreaker" provision has been used just once since the 1890 Mississippi Constitution was enacted. In 1999, the Democrat-controlled House of Representatives voted 86-36 along party lines to elect Democratic candidate Ronnie Musgrove as Governor over Republican candidate Mike Parker. Plaintiffs notably do not allege that Governor Musgrove was not the "African-American-preferred candidate" in 1999 or their own preferred candidate. Nor did Plaintiffs file suit

---

[18] Plaintiffs' allegations that the "Electoral Vote Rule" requires "African Americans' candidates of choice [Democrats] [to] obtain a significantly larger share of the statewide population in order to win a majority of House districts," Doc. 1 at ¶41, is a classic partisan gerrymandering claim—that the legislature drew the "legislative districts 'to favor Republican . . . candidates and to disadvantage Democratic voters,'" *Gill*, 138 S. Ct. at 1927 (quotation omitted). Even if Plaintiffs did seek redistricting as a remedy, which they do not, the Court would not have jurisdiction over the partisan gerrymandering claim. *See Rucho*, 139 S. Ct. at 2493–2502. Further, Plaintiffs' Complaint is defective even as a racial gerrymandering claim because "Plaintiffs who complain generally of racial gerrymandering in their State," like Plaintiffs here, "cannot sue to invalidate the whole State's legislative districting map; such complaints must proceed 'district-by-district.'" *Gill*, 138 S. Ct. at 1930 (quoting *Ala. Legislative Black Caucus v. Ala.*, 135 S. Ct. 1257, 1265 (2015)). As stated above, Plaintiffs have failed to allege "facts showing disadvantage to themselves as individuals." *Id.* at 1930 (quoting *Baker*, 369 U.S. at 206). Thus, they do not have standing to proceed.

concerning the Challenged Provisions after that election.[19] Accordingly, Plaintiffs do not allege any facts to establish an injury caused by the "House Vote Rule." And as with the "Popular Vote Rule," Plaintiffs' insinuation that the "House Vote Rule" might soon be triggered and cause them some injury is nothing more than conjecture for which standing cannot be found.

In summary, Plaintiffs do not allege facts to show that the Challenged Provisions have diluted or minimized *their* votes cast in any election for statewide office, denied *them* an equal opportunity to participate in the political process and elect *their* preferred candidates, or otherwise caused injury to *their* individual rights to vote. And whether the Challenged Provisions might somehow abridge or dilute Plaintiffs' voting rights in connection with the 2019 general election is purely hypothetical and insufficient to confer standing. It is undisputed that in nearly 130 years, the Challenged Provisions have never prevented an "African-American-preferred candidate" who won the popular vote from taking office. There is no basis upon which to predict, and certainly no facts alleged in the Complaint to support, that in the 2019 election (or any future election) Plaintiffs will suffer an imminent or certain injury from the Challenged Provisions.[20] Accordingly, Plaintiffs have failed to allege facts to establish an injury in fact.

---

[19] According to the Complaint, the Challenged Provisions have been criticized in commentaries for years. The fact that no one filed suit and claimed this process was unconstitutional when it put Democratic Governor Musgrove in office in 1999 shows again how this case is all about partisan politics and not about the Constitution or even race for that matter.

[20] Any such future injury might only occur in the governor's race if: (1) the Independent and Constitutional Party candidates splinter votes away from the Republican Party candidate, as opposed to the Democratic Party candidate, which is hypothetical and based only on speculation; and (2) as a result, the Democratic Party candidate wins a plurality, but not a majority, of the vote; and (3) the Democratic Party candidate is thereafter prevented from taking office by the House Vote Rule. That has never happened in Mississippi, and it is not "certainly impending" in the 2019 general election. *Lujan*, 504 U.S. at 564 n.2. It is exponentially more likely that, following conclusion of the 2019 general election, the candidate receiving the highest number of votes also wins the majority of the popular vote. As noted by the Court in *Gill*, however, Justice O'Connor long ago warned that allowing courts to "strike down apportionment plans on the basis of their prognostications as to the outcome of future elections or future apportionments invites 'findings' on matters as to which neither judges nor anyone else can have any

### 2. There is no causal connection between Plaintiffs' alleged injuries and the Secretary's or Speaker's conduct.

The "irreducible constitutional minimum of standing" also requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61 (quotation marks and citations omitted). The Secretary and the Speaker were not responsible for enacting the Challenged Provisions, they are not responsible enforcing the Challenged Provisions, and they are not responsible for defending the constitutionality of the Challenged Provisions.

There is a "long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001). When suing a state official for injunctive relief, a plaintiff lacks standing where the official does not have the power to enforce the complained-of provision because enjoining the official will not prevent the allegedly unconstitutional law from taking effect. *Greater Birmingham Ministries v. Merrill*, 2017 WL 782776, at *4 (N.D. Ala. Mar. 1, 2017).

Here, the Speaker and Secretary do not have the duty or power to enforce Sections 140, 141, or 143 of the Mississippi Constitution. While the Secretary is on the State Board of Election Commissioners and is "designated as Mississippi's chief election officer," that is only "[f]or purposes of the National Voter Registration Act of 1993." Miss. Code Ann. § 23-15-211.1(1); *see* Doc. 1 at ¶23. The statute outlining the Secretary's general duties states that the Secretary is to "keep in his office the returns of all elections by the people, and deliver as received the returns of election of all state officers to the speaker of the house of representatives on the first day of

---

confidence." 138 S. Ct. at 1927 (quoting *Davis v. Bandemer*, 478 U.S. 109, 158 (1986)). That is essentially what the Plaintiffs are asking for here—for the Court to strike down a provision of the Mississippi Constitution based on what "might happen" in the November 2019 election.

the next ensuing session of the legislature after the election." Miss. Code Ann. § 7-3-5. No other statutory or constitutional provision requires additional duties of the Secretary in reference to elections. *See* MISS. CONST. art. V, § 133. The Secretary's obligations with regard to the National Voter Registration Act and his other general duties do not impose any obligation to enforce the Challenged Provisions. Likewise, the Speaker is also not bound by any statutory or constitutional provision requiring enforcement of the Challenged Provisions. *See* Miss. Code Ann. § 5-1-11.[21] Accordingly, the Court should dismiss Plaintiffs' claims for the additional reason that there is no "causal connection" between the alleged injuries and conduct of the Secretary or the Speaker.

> **3. Plaintiffs' injuries are merely speculative, and it is not likely that they will be redressed by the relief requested from the Court.**

Finally, the "irreducible constitutional minimum of standing" requires that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (quotation marks and citations omitted). "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill*, 138 S. Ct. at 1934. As stated above, there is no injury to be redressed by the Court. But even if there were an injury, there is no likelihood that a ruling from this Court enjoining Sections 140, 141, and 143 of the Mississippi Constitution would remedy the alleged future injury. "Marvin King, an associate professor at the University of Mississippi who focuses on African American politics, said that if the lawsuit succeeds, it is unlikely to lead to more statewide victories by Democrats or black candidates." Emily Wagster Pettus and David A. Lieb, *Lawsuit calls Mississippi's way of*

---

[21] On the other hand, Attorney General Jim Hood is a proper defendant because he has a number of duties relevant to constitutional challenges and enforcement of the Challenged Provisions. The Attorney General "shall intervene and argue the constitutionality" of the Challenged Provisions. Miss. Code Ann. § 7-5-1. Further, he is the "chief legal officer and advisor for the state." Miss. Code Ann. § 7-5-1.

*choosing governors racist*, AP NEWS, May 30, 2019. Plaintiffs have alleged zero facts to demonstrate an injury that would be redressed by the requested injunction from the Court.

To obtain injunctive relief, Plaintiffs must be "likely to suffer future injury." *Lyons*, 461 U.S. at 105. "To obtain an injunction, Plaintiffs must show that they have sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Clay v. Garth*, 2012 WL 4470289, at *2 (N.D. Miss. Sept. 27, 2012) (quoting *Lyons,* 461 U.S. at 101–102) (quotation marks omitted)); *see also Hancock Cty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 195 (5th Cir. 2012) (redressability asks whether court's injunction is "likely" to redress alleged injuries posing "realistic danger"). Plaintiffs have not alleged facts to show they have sustained individual injuries, are in "immediate danger" of sustaining an injury, or that an injunction from the Court is likely to redress any such future injury. Accordingly, the Court should dismiss Plaintiffs' claims for failure to establish redressability.

**B.     The Court Should Dismiss this Action because it is Not Ripe.**

This action is also not justiciable because Plaintiffs do not allege sufficient facts to demonstrate that the case is "ripe." "'Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention.'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 320 (1991)). "A case or controversy must be ripe for decision, meaning that it must not be premature and speculative." *Shields*, 289 F.3d at 834–35. Plaintiffs seek relief from an injury that has not happened and might never happen—the action is based purely on speculation about what might occur in the November 2019 election. "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "'A

court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical.'"

*Barbour*, 529 F.3d at 545 (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)).[22]

A claim is not ripe if it is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580–81 (1985). When there exists "a *possible* but not *sufficiently possible injury*[,] [t]his is where a court of limited jurisdiction must stop." *Shields*, 289 F.3d at 837 (emphasis added). To determine whether a claim is ripe, courts evaluate: "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2003); *Choice*, 691 F.3d at 715. Courts also draw a distinction between cases where "any remaining questions are purely legal ones" and cases that require further factual development. *Lopez*, 617 F.3d at 342 (citation omitted).

Here, Plaintiffs do not allege sufficient facts to show that their purported injury is fit for judicial resolution because it is contingent on the hypothetical occurrence of future events. Plaintiffs' claims "sit[] atop a mountain of conjecture and speculation," and are, therefore, not ripe for review." *Foster*, 205 F.3d at 857. In deciding the issues in this case, the Court is left with no choice but to speculate as to "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81. For the alleged injury to occur, Plaintiffs' unnamed "African-American-preferred candidate" must be deprived of statewide office because of the application of the Challenged Provisions. Such has never happened. This court's translating such a hypothetical into the necessary "clean-cut and concrete form" is,

---

[22] "Ripeness often overlaps with standing, 'most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical.'" *Id.* (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006)). The question is "'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" *Id.* (quoting *Warth*, 422 U.S. at 499 n.10). Here, the injury is hypothetical only and does not warrant judicial intervention. *See Lopez v. City of Houston*, 617 F.3d 336, 341–42 (5th Cir. 2003) (quoting *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007)).

therefore, rendered impossible without "engag[ing] in [a] form of legal forecasting [that] could only lead to ill-advised adjudication." *Renne*, 501 U.S. at 321–22.[23] Further, because there is no concrete, particularized, actual, and imminent injury that is ripe for the Court's consideration, there is no "potential hardship to the parties" caused by the Court declining consideration of Plaintiffs' claims.  If the remote, unlikely hypothetical that Plaintiffs envision does actually occur, Plaintiffs can seek relief from the Court at that time.[24] There is nothing novel about seeking relief to challenge an election after it occurs.

Indeed, one of the many reasons courts are rightfully cautious in addressing pre-election challenges to state election schemes is that such challenges necessary rely on guesses as to the actions of individuals based on stereotypes and assumptions. Plaintiffs place Mississippi voters into boxes, assuming that most black people will vote Democrat, white people will vote Republican, and the state House of Representatives will summarily oust any Democrat that receives a plurality of the popular vote. Plaintiffs' theory even assumes Plaintiffs will vote for the Democratic candidate, even though they make no such allegation in the Complaint. *See Renne*, 501 U.S. at 321–22 (challenge to state constitution provision prohibiting political parties from endorsing non-partisan candidates was not ripe in part because "Respondents [did] not allege an intention to endorse any particular [non-partisan] candidate"); *Barbour*, 529 F.3d at 545–46 (Democratic party's challenge was not ripe in part because they were required to "show

---

[23] In addressing constitutional challenges to state voting procedures, courts must be guided by past events. *See Barbour*, 529 F.3d at 547; *Rucho*, 139 S.Ct. at 2492-2504 (relying on history to determine partisan gerrymandering claims are political questions, beyond the reach of federal courts). The Challenged Provisions have *never* before been applied to deprive an "African-American-preferred candidate" a statewide office. Without a pattern of past Constitutional violations with regard to these specific provisions, there is no basis for the Court to hypothesize that such an eventuality may occur.

[24] For the reasons shown above in the "injury" analysis, Plaintiffs' claims are based on the occurrence of hypothetical, future events, requiring dismissal.

that they intend to hold closed primaries" in violation of Mississippi law but they had "taken no steps" to do so). The Supreme Court has cautioned against such broad assumptions, explaining that it is impossible to predict how and why voters act:

> [Courts] cannot reliably account for some of the reasons voters prefer one candidate over another, or why their preferences may change. Voters elect individual candidates [based on] issues that matter to them, the quality of the candidates, the tone of the candidates' campaigns, the performance of an incumbent, national events or local issues that drive voter turnout, and other considerations. Many voters split their tickets. Others never register with a political party, and vote for candidates from both major parties at different points during their lifetimes. For all of those reasons, asking judges to predict how a particular districting map will perform in future elections risks basing constitutional holdings on unstable ground outside judicial expertise.

*Rucho*, 2019 WL 2619470, at *14. Without allegations of past instances where the Challenged Provisions were applied in a constitutionally impermissible manner, and given the variable and diverse nature of individual voting practices, Plaintiffs claims are hypothetical and abstract at best and are not ripe for judicial determination.

### C. Plaintiffs' Claims with Regard to the "Electoral Vote Rule" Amount to Nonjusticiable Political Questions.

While it is "'the province and duty of the judicial department to say what the law is[,]' [s]ometimes, however, 'the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights.'" *Rucho*, 139 S. Ct. at 2494 (quoting *Marbury*, 5 U.S. at 177; *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion)). "In such a case the claim is said to present a 'political question' and to be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Id.* (citing *Baker*, 369 U.S. at 217).[25]

---

[25] "We conclude that partisan gerrymandering claims present political questions beyond the reach of the federal courts." *Id.* "Federal judges have no license to reallocate political power between the two major political parties, with no plausible grant of authority in the Constitution, and no legal standards to limit

As stated above, Plaintiffs' claims regarding the "Electoral Vote Rule" amount to nothing more than a partisan gerrymandering claim. *Id.* at 2506-07.[26] "Any judicial decision on what is 'fair' in this context would be an 'unmoored determination' of the sort characteristic of a political question beyond the competence of the federal courts." *Id.* at 2500 (quoting *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)). "Partisan gerrymandering claims rest on an instinct that groups with a certain level of political support should enjoy a commensurate level of political power and influence." *Id.* at 2499. "Partisan gerrymandering claims invariably sound in a desire for proportional representation." *Id*. "'Our cases, however, clearly foreclose any claim that the Constitution requires proportional representation or that legislatures in reapportioning must draw district lines to come as near as possible to allocating seats to the contending parties in proportion to what their anticipated statewide vote will be.'" *Id.* (quoting *Davis*, 478 U.S. at 130 (plurality opinion) and citing *Mobile v. Bolden*, 446 U.S. 55, 75–76 (1980) (plurality opinion) ("The Equal Protection Clause of the Fourteenth Amendment does not require proportional representation as an imperative of political organization.")).

## II.    The Court Should Dismiss this Action, including Plaintiffs' Voting Rights Act claims, under Rule 12(b)(6) and the Doctrine of Prudential Standing.

"Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government." *Superior MRI Servs., Inc. v. All.*

---

and direct their decisions." *Id.* "'[J]udicial action must be governed by standard, by rule,' and must be 'principled, rational, and based upon reasoned distinctions' found in the Constitution or laws." *Id.* (quoting *Vieth*, 541 U.S. at 278, 279 (plurality opinion)). "Judicial review of partisan gerrymandering does not meet those basic requirements." *Id.*

[26] "Unlike partisan gerrymandering claims, a racial gerrymandering claim does not ask for a fair share of political power and influence, with all the justiciability conundrums that entails." *Rucho*, 139 S. Ct. at 2502. "It asks instead for the elimination of a racial classification. A partisan gerrymandering claim cannot ask for the elimination of partisanship." *Id.* Plaintiffs' claims are clearly of partisan nature.

*Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quotation marks and citation

omitted).[27] Prudential standing encompasses "at least three broad principles: 'the general

prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of

generalized grievances more appropriately addressed in the representative branches, and the

requirement that a plaintiff's complaint fall within the zone of interests protected by the law

invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)

(quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

First, for the reasons set forth above, the Court should dismiss all of Plaintiffs' claims

under the prudential standing doctrine because the Complaint "raises abstract questions or a

generalized grievance more properly addressed by the legislative branch" and because Plaintiffs

are "asserting the legal rights and interests of third parties" as opposed to their "own legal rights

and interests." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 n.9 (5th Cir.

2001). As to Plaintiffs' Voting Rights Act ("VRA") claims, the VRA requires a "qualification or

prerequisite to voting" that "<u>results</u> in a denial or abridgement of the right of any citizen of the

United States to vote on account of race or color." 52 U.S.C. § 10301(a) (emphasis added).

Plaintiffs clearly allege that the Challenged Provisions were enacted with discriminatory intent;

however, that is not enough for a claim under Section 2 of the VRA. It is well established that to

maintain a claim under the VRA, Plaintiffs must set forth facts sufficient to demonstrate

discriminatory impact, i.e. "actionable vote dilution" as distinguishable from "political defeat at

---

[27] Unlike Article III constitutional standing, which is viewed under Rule 12(b)(1), prudential standing is
viewed under Rule 12(b)(6). *Cannimore*, 2019 WL 136996, at *2 (citing *Harold H. Huggins Realty, Inc.
v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Under Rule 12(b)(6), the "'court accepts all well-
pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Id.* (quoting *Martin K.
Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). "But 'the tenet that a
court must accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

the polls." *League of United Am. Citizens Council No. 4434 v. Clements*, 999 F.2d 831, 850 (5th Cir. 1993) (en banc). Plaintiffs have set forth zero facts to establish that the Challenged Provisions negatively impacted their individual voting rights.

Additionally, the Court should dismiss Plaintiffs' claims brought under Section 2 of the VRA because Plaintiffs' claims do not "fall within the zone of interests protected by the" VRA. *Lexmark*, 572 U.S. at 126; *Logan*, 263 F.3d at 460 n.9. This is so for several reasons. First, Section 2 of the VRA protects only those who have been injured by the law at issue. As shown above, Plaintiffs allege no facts to show that Challenged Provisions have injured them. Section 2 of the VRA protects only the opportunity but "not the right to vote for the winning candidate." *Nevett v. Sides*, 571 F.2d 209, 236 (5th Cir. 1978).[28]

Second, Plaintiffs' claims do not fall within the zone of interests intended to be protected by Section 2 of the VRA because majority-vote requirements, such as the "Popular Vote Rule," are not "a per se violation of Section 2 of the Voting Rights Act of 1965." *Martin v. Allain*, 658 F. Supp. 1183, 1198 (S.D. Miss. 1987); *see also Butts v. City of New York*, 779 F.2d 141, 149 (2d Cir. 1985) (VRA does not "prevent any governmental unit from deciding that the winner must have not merely a plurality of the votes, but an absolute majority (as where run-offs are required when no candidate in the initial vote secures a majority)"); *Bond v. Fortson*, 334 F. Supp. 1192, 1193 (N.D. Ga. 1971) (no standing to challenge majority-vote requirement because run-off election far from certain). Also, "electoral devices" identified in the Senate Report on the VRA,

---

[28] The Supreme Court has expressly stated that "the ultimate right of § 2 is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race." *Johnson v. De Grandy*, 512 U.S. 997, 1014 n.11 (1994). "The right to vote does not entail the right to have a minority candidate elected." *Smith v. Winter*, 717 F.2d 191, 198 (5th Cir. 1983); *see also* 52 U.S.C. § 10301(b) ("nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population").

such as majority-vote requirements, "may not be considered *per se* violat[ions] of § 2."

*Thornburg v. Gingles*, 478 U.S. 30, 46 (1986) (citing S. Rep. No. 97-417, 27–28 (1982)).

## III. The Court Should Dismiss the Action Under Rules 12(b)(1) and 12(b)(7) because the Speaker and Secretary are not Proper Defendants and are Immune From this Suit, and because Plaintiffs Failed to Join the Mississippi Attorney General as a Necessary Party; Alternatively, the Court Should Dismiss the Speaker and Secretary and join the Attorney General.

The Court should dismiss this action under Rule 12(b)(1) because the Speaker and Secretary are not proper Defendants as they do not have sufficient connection with enforcement of the Challenged Provisions. *See Greater Birmingham Ministries*, 2017 WL 782776, at *4, 14; *Okpalobi*, 244 F.3d at 426. Plaintiffs do not set forth facts sufficient to demonstrate that the Speaker and Secretary are responsible for enforcing the Challenged Provisions. Instead, the Attorney General is the proper defendant on all claims. The Attorney General has the duty to defend challenges to the Mississippi Constitution in general and the Challenged Provisions. The Attorney General "shall intervene and argue the constitutionality of any statute when notified of a challenge thereto, pursuant to the Mississippi Rules of Civil Procedure." Miss. Code Ann. § 7-5-1. Further, the Attorney General is the "chief legal officer and advisor for the state." *Id.*

Along the same lines, the Eleventh Amendment bars Plaintiffs' claims against the Speaker and Secretary, but not against the Attorney General.[29] Eleventh Amendment immunity prohibits claims against the State, agencies considered "arm[s] of the state," and state officials sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984). To overcome Eleventh Amendment immunity, Plaintiffs will argue their claims fit within a narrow exception derived from *Ex parte Young*, 209 U.S. 123 (1908). But the *Ex parte Young*

---

[29] Generally, courts have treated dismissals based on sovereign immunity as jurisdictional under Fed. Rule Civ. Proc. 12(b)(1), despite "the uniquely ambiguous character of Eleventh Amendment immunity." *Cantu Services, Inc. v. Roberie*, 2013 WL 3420524, *4 n.3 (5th Cir. 2013) (citations omitted).

exception applies only if the defendant has sufficient connection with enforcement of the act in question or is "specifically charged with the duty to enforce the statute' and [is] threatening to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 414-16). "The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* As shown, Plaintiffs' claims do not invoke an obligation of the Speaker or Secretary to enforce the Challenged Provisions. Instead, the Attorney General is obligated to intervene and defend the constitutionality of the Challenged Provisions. Thus, the Court should dismiss all of Plaintiffs' claims against the Speaker and Secretary under Rule 12(b)(1) and Eleventh Amendment immunity.

Moreover, the Court should dismiss this action under Rule 12(b)(7) for Plaintiffs' failure to join a necessary and indispensable party as required by Rule 19. "Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry." *Hood ex. rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). "First the district court must determine whether the party should be added under the requirements of Rule 19(a)." *Id.* Rule 19(a) provides in relevant part that joining a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Second, the court must determine whether the necessary party can be joined. *Hood*, 570 F.3d at 629. First, the Attorney General is a necessary party under Rule 19(a)(1)(A) because the Court "cannot accord complete relief" in his absence. *See Barbour*, 529 F.3d at 542. As discussed, the Attorney General "shall intervene and argue the constitutionality" of the Challenged Provisions.

Miss. Code Ann. § 7-5-1.[30] Second, if the Court determines that the Attorney General cannot be joined as a defendant, then the entire action should be dismissed.

Alternatively, if the Attorney General is deemed to be a necessary party under Rule 19 and he can be joined as a defendant, then the Speaker and Secretary request that he be so joined and be required to carry out his statutory obligation to defend the Mississippi Constitution.[31] Regardless of whether the Attorney General is ultimately joined as a defendant, however, the Court should dismiss the Speaker and Secretary from this action because they do not have the duty or power to enforce the Challenged Provisions.[32]

## CONCLUSION

For the reasons discussed above, the Speaker and Secretary respectfully request that the Court dismiss the Complaint with prejudice. The Speaker and Secretary request such other and further relief as the Court deems appropriate under the circumstances.

Date:  July 15, 2019.

---

[30] The Attorney General was held to be a proper defendant in *Dupree v. Mabus*, 776 F. Supp. 290 (S.D. Miss. 1991) as "the chief legal officer and advisor for the state." *Id.* (citing Miss. Code Ann. § 7-5-1);

[31] *See also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.")

[32] The Court does not even need to reach the determination of whether the Speaker, Secretary, or Attorney General is the proper defendant because, as stated above, Plaintiffs do not have standing.

Respectfully submitted,

**PHILIP GUNN, IN HIS OFFICIAL CAPACITY AS THE SPEAKER OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES, AND DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY AS THE MISSISSIPPI SECRETARY OF STATE**

*/s/ Trey Jones*
Trey Jones
One of Their Attorneys

William Trey Jones, III (MSB #99185)
tjones@brunini.com
Cody C. Bailey (MSB #103718)
cbailey@brunini.com
Jacob A. Bradley (MSB #105541)
jbradley@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

<u>**CERTIFICATE OF SERVICE**</u>

I, Trey Jones, hereby certify that on July 15, 2019, I caused the foregoing pleading to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and registered participants.

*/s/ Trey Jones*
Trey Jones
One of the Attorneys for the Defendants