IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LESLIE-BURL McLEMORE;                                                PLAINTIFFS
CHARLES HOLMES;
JIMMIE ROBINSON, SR.;
RODERICK WOULLARD;
BRENDA BOOTH;
JORDAN MALONE; and
TYLER YARBROUGH

VS.                                     CIVIL ACTION NO. 3:19-cv-383-DPJ-FKB

DELBERT HOSEMANN, in his official capacity                   DEFENDANTS
as the Mississippi Secretary of State; and PHILIP
GUNN, in his official capacity as the Speaker of the
Mississippi House of Representatives

---

REBUTTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
FILED BY THE SPEAKER OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES
AND THE MISSISSIPPI SECRETARY OF STATE

---

William Trey Jones, III (MSB #99185)
Cody C. Bailey (MSB #103718)
Jacob A. Bradley (MSB #105541)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
Email: cbailey@brunini.com

*Counsel for Defendants Philip Gunn, in his official capacity as the Speaker of the Mississippi House of Representatives, and Delbert Hosemann, in his official capacity as the Mississippi Secretary of State*

I. **Plaintiffs Have Not Alleged Facts to Support Their Alleged Injury: that the Challenged Provisions Prevent Them From Electing "African-American-Preferred Candidates."**

In their Response, Plaintiffs retreat from their own allegations of purported injury in the Amended Complaint and now state that they do not need to demonstrate a past, present, or future inability to elect "African-American-preferred candidates" (Democrats) in order to state an Article III injury.[1] Not only are Plaintiffs incorrect, as shown below, but that is the injury they have attempted to plead, albeit unsuccessfully.[2] The Amended Complaint confirms on its face that Plaintiffs attempted to plead an injury based on the Challenged Provisions allegedly operating to inhibit the election of so-called "African-American-preferred candidates."

- "The Electoral-Vote Rule hinders African Americans' ability to elect candidates of their choice." Doc. 26 at ¶41.
- "The Popular-Vote Rule ensures that . . . [African-American-preferred candidates] are unlikely to be elected." *Id.* at ¶47.
- "The House-Vote Rule . . . thwarts the election of an African-American-preferred candidate." *Id.* at ¶48.
- "The Challenged Provisions . . . have had the effect[] of denying African Americans in Mississippi an equal opportunity to . . . elect their preferred candidates to statewide office." *Id.* at ¶59; *see also* ¶¶98, 105, 115, 116, 117.

---

[1] It is remarkable that Plaintiffs have made these allegations in the Amended Complaint to challenge election rules, but now they admit that they really have no basis to say that the rules have or will ever actually prevent them from electing their candidate of choice. This suit was obviously filed because of some concern about how the rules "might" impact Democratic candidates. That is not a valid basis for which to seek relief from this Court. And while most of Plaintiffs' response focused on their alleged injury, Plaintiffs' failure to allege facts to establish that the Challenged Provisions have been applied to prevent them from electing "African-American-preferred candidates" also highlights Defendants' arguments that Plaintiffs cannot satisfy causation, redressability, or ripeness, all of which remain adequate bases upon which the Court should dismiss this lawsuit. *See* Doc. 28 at 6–21.

[2] Plaintiffs are bound by their pleadings. If a plaintiff chooses to make particular allegations in support of his claim and those allegations will not support relief, then the complaint may be dismissed. *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 99 (5th Cir. 1974); *Klug v. Chicago Sch. Reform Bd. of Trs.*, 197 F.3d 853, 858 (7th Cir. 1999) (quotation omitted) (if plaintiff chooses to plead particulars, and those particulars show he has no claim, "then he is out of luck—he has pleaded himself out of court"); Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1219 (3d ed.) ("overpleading might render the complaint vulnerable to attack by pretrial motion should it show on its face that no claim for relief exists").

Plaintiffs allege no facts whatsoever to support their conclusory allegations that the Challenged Provisions have prevented them from electing their "candidates of choice" in past elections. And Plaintiffs allege no facts to show it is "imminent" or "certainly impending" that the Challenged Provisions will prevent them from electing Democrats in the future.

Instead, Plaintiffs now contend that to state an Article III injury they need only plead that they are African American and that the Challenged Provisions operate collectively to dilute African American votes in general. That is the epitome of a generalized grievance that is insufficient to state an injury in fact. *See Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2, 573–74 (1992). Plaintiffs cite no case supporting their modified position that a broad, abstract injury based on general vote dilution is sufficient for standing without regard to the outcome of past or future elections.[3]

Plaintiffs rely on *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993), and its progeny, to contend that they need not show that the Challenged Provisions have deprived, or will deprive, an "African-American-preferred candidate" of statewide office. In doing so, Plaintiffs distort the holding of that case, which is not only inapposite but is also expressly limited to cases of a different "variety," where there is an express classification that *prevents a group from participating*. *Id.* In *Associated Contractors*, a Jacksonville ordinance contained an explicit racial classification that treated contractors differently on the basis of race, awarding minorities a set number of

---

[3] Plaintiffs' citation of three easily distinguishable district court cases from other districts for the proposition that "courts have *roundly* rejected the notion that a claim alleging a disproportionate burden on a minority group is a 'generalized grievance'" fails to account for the injury they pleaded—the inability *to elect* their candidates of choice, not the *inability to vote altogether*. Doc. 31 at 12 (emphasis added) (citing *Veasey v. Perry*, 29 F. Supp. 3d 896, 899–903 (S.D. Tex. 2014) (voter-identification provision prevented plaintiffs from voting); *Mich. State A. Philip Randolph Inst. v. Johnson*, 209 F. Supp. 3d 935, 941 (E.D. Mich. 2016) (prohibition against straight-party voting resulted in long lines that prevented voting); *Black v. McGuffage*, 209 F. Supp. 2d 889, 894 (N.D. Ill. 2002) (voting equipment failed to count plaintiffs' votes)).

2

contracts and prohibiting others from even bidding on the contracts. *Id.* at 658–59. The Court of Appeals held the plaintiff lacked standing because it failed to allege that one of its members "would have *been awarded* a contract but for the challenged ordinance"—as opposed to alleging that the member would have simply bid on the contract. *Id.* at 664 (emphasis added). The Supreme Court reversed, holding the prohibition against *bidding* on the contracts, coupled with the stated intent *to bid* on the contracts, was sufficient for standing. Here, Plaintiffs do not allege that they have been deprived of the *ability to vote* in past elections, nor do they allege facts to show that they have been prevented from electing their candidates of choice. And importantly, the holding in *Associated Contractors* was expressly limited to cases of its "variety"—where there was an express, preventative classification (i.e., you can only bid on this contract if you are African American). *Id.* at 666. Here, there is clearly no express preventative classification in the Challenged Provisions (much less an express, race-based classification). *See Aderant Constructors, Inc. v. Pena*, 515 U.S. 200, 211–12 (1995).[4]

To the contrary, *Bond v. Fortson* establishes that Plaintiffs' injury must be connected to the outcome of elections. 334 F. Supp. 1192, 1194 (N.D. Ga.), *aff'd*, 404 U.S. 930 (1971).[5] Plaintiffs there alleged Georgia's majority-vote and run-off provisions for election of United States Senators and Representatives violated both the Fourteenth Amendment and Section 2 of

---

[4] Courts refuse to apply *Associated Contractors* to different "varieties" of equal protection cases. *E.g.*, *Day v. Sebelius*, 376 F. Supp. 2d 1022, 1038 (D. Kan. 2005) ("Plaintiffs seem to believe that [*Associated Contractors*] applies to every case where an equal protection claim is asserted. We must disagree."); *LaRoque v. Holder*, 831 F. Supp. 2d 183 (D.D.C. 2011) ("Unlike the *Jacksonville* plaintiff, the plaintiffs here have not shown that the government classified them based on the color of their skin.")

[5] "[S]ummary affirmances by the Supreme Court . . . 'prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.'" *LULAC v. Abbott*, 369 F. Supp. 3d 768, 769 (W.D. Tex. 2019) (quoting *Mandel v. Bradley*, 432 U.S. 173, 176 (1977)).

3

the Voting Rights Act ("VRA"). *Id.* at 1192–93.[6] The district court granted defendants' motion to dismiss because plaintiffs did "not present a 'justiciable case or controversy,' and a decision on the merits would be an advisory opinion forbidden by . . . [the] Constitution." *Id.* at 1193.[7] In that case, the court held that plaintiffs lacked standing because they had "not yet experienced any adverse impact they claim these statutes threaten" and did not "challenge the outcome of a particular election." *Id.* at 1194. Further, as here:

> Indeed, it is unknown when, if ever, there will be a failure to elect [by majority vote], or whether a run-off will ever be required. . . . Plaintiffs have no immediate live controversy with the defendants requiring determination of the constitutionality of the statutes they attack. Rather they seek an advisory opinion as to an abstract situation which *may* occur in the 1972 elections. This Court does not have judicial power to render such an opinion.

*Id.* (citations omitted); *see also Public Citizen, Inc. v. Miller*, 813 F. Supp. 821, 827 (N.D. Ga.), *aff'd*, 992 F.2d 1548 (11th Cir. 1993) (challenges to election rules "were not clearly ripe for adjudication prior to . . . run-off" when it would be determined whether plaintiffs' preferred candidate would be defeated because "challenge to the majority vote statute prior to a candidate's actual receipt of a plurality but not a majority of the votes cast is not justiciable" (citing *Bond*, 334 F. Supp. at 1194)); *Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009).

Likewise, the other cases cited by Plaintiffs (and the claims and alleged injuries in those cases) are distinguishable and fail to eliminate the requirement that Plaintiffs' claims be tied to

---

[6] Plaintiffs must link their injuries to election outcomes as have others challenging such election rules. *Jeffers v. Clinton*, 740 F. Supp. 585, 595 (E.D. Ark. 1990) (majority vote requirements unconstitutional because they "replace[d] a system in which blacks could and did succeed, with one in which they almost certainly cannot"); *Whitfield v. Democratic Party of State of Ark.*, 890 F.2d 1423, 1430 (8th Cir. 1989) ("[d]uring the past four years, but for the runoff primary elections, four black candidates would have been the Democratic Party's nominee"); *id.* at 1433 ("the majority vote requirement has, up to this point, prevented blacks from electing the candidates of their choice, and so, the elimination of that requirement is mandated by section 2").

[7] Notably, the court first reasoned that the "case does not involve a statute unconstitutional on its face: there is no constitutional provision expressly providing for election of Congressmen by plurality vote or in terms prohibiting the states from requiring election by a majority vote." *Id.*

4

election outcomes. In *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 497 (7th Cir. 2005), like *Associated Contractors*, plaintiffs alleged "'injury in fact' [of] the inability to compete on an equal footing" with other Indian tribes as a result of an explicit provision which applied different processes of awarding licenses to other tribes. *Id.* And Plaintiffs' cited election cases are inapposite because those cases concerned impediments to *the ability to vote altogether*, as opposed to the *ability to elect the candidate of choice* as alleged here. *See Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 813–14 (S.D. Ind. 2006) (plaintiffs could not cast ballot at all under state's voter-identification law); *Dennis v. N.Y. City Bd. of Elections*, 1994 WL 613330, at *3 (S.D.N.Y. Nov. 7, 1994) (plaintiffs' votes were not counted at all because of voter irregularities); *Rockefeller v. Power*, 74 F.3d 1367, 1369–70 (2d Cir. 1995) (plaintiffs were injured when their candidates were not listed on the ballot).[8]

These Challenged Provisions concern the outcome of elections, and Plaintiffs therefore cannot ignore the actual elections in the standing analysis. Plaintiffs have alleged no facts to show that the Challenged Provisions have resulted in, or will result in, the effect of injuring them in the way alleged in the Amended Complaint. Because the Challenged Provisions are facially neutral as to race, Plaintiffs must "'prove that the purpose *and operative effect*' of the challenged election scheme 'is to dilute the voting strength of [minority] citizens'" in a way that has resulted in the inability to elect Democratic candidates who receive a plurality of votes. *Harding v. Cty. of Dallas*, 336 F. Supp. 3d 677, 700 (N.D. Tex. 2018) (quoting *Voter Info. Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 212 (5th Cir. 1980) (emphasis in original)). The focus must be on

---

[8] In *Rockefeller*, again the issue was "ability to compete;" that is, "ability to vote" for certain candidates. Plaintiffs have never been denied the ability to vote for their candidates of choice, and they have not alleged such as injury. *See, e.g.,* Doc. 28 at 14. Also, Plaintiffs' quotation from *Avery v. Midland Cty. Tex.*, 390 U.S. 474, 481 n.6 (1968), is dictum and out of context. Doc. 31 at 20. There, the issue was whether the rule requiring proportional representation in legislative bodies applied to local government such that Midland County's "vast imbalance" in populations of its four districts violated the one-person, one-vote principal. *Id.* at 476, 481 n.6. Plaintiffs allege no "vast imbalance" in districts here.

the "results" and "exclusively on the consequences" of the challenged election rules and how they affect elections. *Voinovich v. Quilter*, 507 U.S. 146, 155 (1993); *Abbott v. Perez*, 138 S. Ct. 2305, 2332 (2018) (under "results test" "it is hard to see how this standard could be met if the alternative to the [law] at issue would not enhance the ability of minority voters to elect the candidates of their choice"); *Bond*, 334 F. Supp. at 1194. Plaintiffs have not alleged, nor has there ever been, a circumstance where an "African-American-preferred candidate" obtained a plurality of the vote but did not take office due to the Challenged Provisions. And Plaintiffs fail to allege such a "result" is "certainly impending" or "substantially likely" to occur in a future election.

## II. Plaintiffs' Response Confirms that their Claims are Partisan Gerrymandering Claims, which are Nonjusticiable Under *Rucho*.

Plaintiffs concede that the only allegation they offer to support their theories of general vote dilution and violation of the one-person, one-vote principal is:

> Due to racially polarized voting and the geographic and electoral concentration of the racial groups among the House districts, a white-preferred candidate does not even need to win a majority of the popular vote to win a majority of the House districts, while an African-American-preferred candidate must obtain at least 55 percent of the popular vote to win a majority of House districts . . . .

Doc. 26 at ¶41.[9] That allegation, which is the crux of Plaintiffs' entire case, is aimed at the way the House districts are drawn. Because the Challenged Provisions apply equally to all voters, regardless of race, Plaintiffs' allegation amounts to a partisan gerrymandering claim.[10]

---

[9] Plaintiffs repeatedly assert that Defendants "do not dispute" Plaintiffs' 55-percent analysis. *See* Doc. 31 at 1, 11, 17. It should go without saying that Plaintiffs' assertion is improper, as Defendants are required at this stage to accept pleaded facts as true. *See, e.g., Papin v. Univ. of Miss. Med. Ctr.*, 347 F. Supp. 3d 274, 277 (S.D. Miss. 2018).

[10] Plaintiffs do not allege that the Challenged Provisions have prevented them from voting for their candidates of choice, and Plaintiffs do not otherwise attempt to allege how they have been denied "an equal opportunity to participate in the political process." Plaintiffs say their claims are "grounded in the

6

Plaintiffs rely on *Gray v. Sanders*, 372 U.S. 368 (1963), but *Gray* held that Georgia's county-unit system (not based on proportionally drawn voting districts) violated the Constitution because it "weights the rural vote more heavily than the urban vote and weights some small rural counties heavier than other larger rural counties." *Id.* at 379. Here, Plaintiffs' votes are not "given unequal weight" by the Challenged Provisions. In fact, the votes are not "weighted" at all. Rather, the votes are counted under the "Popular Vote Rule" for purposes of determining whether a candidate received a majority of popular vote, and then they are counted a second time by district under the "Electoral Vote Rule."[11] *Gray* clearly does not foreclose the ability to choose statewide officers on this basis or by means other than popular vote.

To support their allegation, Plaintiffs cite statistics offered by an expert whose testimony has already been rejected by the United States Supreme Court in *Gill* and *Rucho*. And even if the "55%" statistic is accurate, it is a result of nothing other than the way the House districts are drawn. Thus, it is a partisan gerrymandering claim. *See* Doc. 26 at ¶110 (confirming Plaintiffs' claims "depend[] on the legislative districts in which [Mississippians] reside").[12] And the claim is not ultimately about race. Instead, Plaintiffs' claim is that the way the House districts are drawn makes it difficult for African Americans to elect Democrats ("African-American-preferred

---

lack of equal opportunity," but other than pointing at how the House districts are drawn, they do not allege how the Challenged Provisions deprive them of such equal opportunity in the voting process.

[11] As discussed below and in Defendants' Motion to Dismiss, *Gray* was concerned with prohibiting geographic discrimination between rural and urban counties and did not hold that electing statewide officers on the basis of legislative districts is unconstitutional. 372 U.S. at 379. Plaintiffs cite no cases to establish a *per se* prohibition of district-based voting in statewide elections. "[T]here is no provision of the United States Constitution or any of its amendments which either expressly or impliedly dictates the method a State must use to select its Governor." *Fortson v. Morris*, 385 U.S. 231, 234 (1966) (upholding Georgia's version of "Popular Vote Rule and "House Vote Rule").

[12] *See* Doc. 26 at ¶37–38 (complaining of alleged "system of electors in which a gerrymandering of counties would provide white governors and legislators" and also referencing "legislative apportionment plan" as the root cause of the alleged problem).

7

candidates") over Republicans ("white-preferred candidates"), hence the blatantly partisan nature of Plaintiffs' gerrymandering claim.[13] Constitutional claims should not turn on political whims and changing partisan landscape. After this lawsuit was filed, the United States Supreme Court expressly held that such partisan gerrymandering claims present nonjusticiable political questions. *Rucho v. Common Cause*, 139 S. Ct. 2484, 2491 (2019).[14]

### III. Plaintiffs Fail to Sufficiently Allege Claims Under Rule 12(b)(6) and the Prudential Standing Doctrine.

Plaintiffs did not refute Defendants' assertion that Plaintiffs failed to allege facts sufficient to plead discriminatory impact, effect, or results as required for vote dilution claims. *See Davis v. Bandemer*, 478 U.S. 109, 127 (1986) ("plaintiffs were required to prove . . . actual discriminatory *effect*") (emphasis added); 52 U.S.C. § 10301(a) (vote-dilution claims under Section 2 of VRA specifically require "*results* [of] denial or abridgement of the right . . . to vote on account of race or color") (emphasis added); Doc. 28 at 23–30.

Plaintiffs also failed to refute that their challenges relate to single-member, *statewide* offices where the "concept of vote dilution is effectively rendered meaningless" and which are not intended to be subject to Section 2 of the VRA. *LULAC No. 4434 v. Clements*, 902 F.2d 293, 313 (5th Cir. 1990); *Butts v. City of New York*, 779 F.2d 141, 149 (2d Cir. 1985). It follows that Plaintiffs' majority-vote cases challenging primary elections for county offices and at-large elections for multi-member bodies are inapposite and not applicable. *See* Doc. 31 at 23.

---

[13] Plaintiffs' claim is a gerrymandering claim because it is based on how the districts are drawn, but it is not a *racial* gerrymandering claim because Plaintiffs are not claiming that the *districts* were drawn with a racially-discriminatory motive as required for such claims. *Shaw v. Reno*, 509 U.S. 630, 642–43 (1993).

[14] Multiple recent commentaries have recognized that Plaintiffs' claims are inconsistent with the holding in *Rucho*. *See, e.g.*, Matt Ford, *Mississippi Quotes John Roberts to Defend Its Racist Election Law*, THE NEW REPUBLIC (July 19, 2019), online at: https://newrepublic.com/article/154496/mississippi-quotes-john-roberts-defend-racist-election-law.

8

Further, that the *Gingles* factors "cannot be applied mechanically," *Voinocich*, 507 U.S. at 158, does not eliminate the requirement that their purpose be upheld: to "establish that 'the minority [group] *has the potential to elect a representative of its own choice*' . . . but that racially polarized voting prevents it from doing so . . . because it is 'submerg[ed] in a larger white voting population,'" *Cooper v. Harris*, 137 S. Ct. 1455, 1470 (2017) (quoting *Growe v. Emison*, 507 U.S. 25, 40 (1993)) (emphasis added). Plaintiffs have not alleged any facts to that end, and they have not shown it is likely a Democratic candidate will be deprived of office as a result of the application of the Challenged Provisions, as necessary to prove injury under *Gingles*.

Contrary to Plaintiffs' assertions and their citation of *Bartlett*, the Supreme Court specifically left open "whether intentional discrimination affects the *Gingles* analysis." *See Bartlett v. Strickland*, 556 U.S. 1, 20 (2009). Neither the Fifth Circuit nor the Southern District of Mississippi has addressed the question and the strongest persuasive authority available states that an allegation of intentional discrimination "does not 'lessen[] the amount of discriminatory results that must be shown.'" *Ga. State Conference of NAACP v. State*, 269 F. Supp. 3d 1266, 1279 (N.D. Ga. 2017) (quotation omitted). The *Gingles* factors did not apply in *Brown* not because of intentional discrimination, but because that case involved episodic acts of discrimination which, like voter-registration cases, could not be reconciled with the language of *Gingles*. *United States v. Brown*, 494 F. Supp. 2d 440, 449–83 (S.D. Miss. 2007); *Id.* at n.67.

### IV. The Governor and Attorney General are the Proper Defendants in this Action, not the Speaker and Secretary.

There is not a sufficient causal connection between Plaintiffs' alleged injury and the actions of the Speaker and Secretary; they simply do not have the power or duty to *enforce* the Challenged Provisions. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001); *Greater Birmingham Ministries v. Alabama*, 2017 WL 782776, *4, 14 (N.D. Ala. Mar. 1, 2017).

Plaintiffs' claims have nothing to do with the functions of the Speaker or Secretary. In their rebuttal in support of their Motion for Preliminary Injunction, Plaintiffs admit the same, stating that their requested relief affects only the method by which Mississippi determines the winner of each race for statewide, state office after all votes have been tallied, which they acknowledge would not "change how the state administers its election." Doc. 29 at 1. The Secretary and Speaker are not charged with determining the rules or methods for who wins elections. Instead, the Attorney General is the proper defendant on all claims because that office has the mandatory duty to intervene as a party and defend challenges to the Mississippi Constitution. Miss. Code Ann. § 7-5-1. (Attorney General "shall intervene"). Plaintiffs did not refute this mandatory duty in their Response. Also, the Governor is a proper defendant because the Constitution vests that office with "chief executive power of [Mississippi]," and he has the constitutional obligation to "see that the laws are faithfully executed." MISS. CONST. ART. V, §§ 116, 123; Miss. Code Ann. § 7-1-5(a), (c), & (d).

For the same reasons, the Eleventh Amendment bars Plaintiffs' claims against the Speaker and Secretary, but not against the Attorney General or Governor. *Air Evac EMS, Inc. v. Texas, Dep't of Ins. Div. of Workers' Comp.*, 851 F.3d 507, 517–18 (5th Cir. 2017). Plaintiffs argue that they are allowed by *Ex parte Young* to sue individual state officers instead of the state; that is true, but only to the extent that the individual state officers have a clear and direct connection with enforcement of the challenged laws. Regardless of whether the Attorney General or Governor is joined, the Court should dismiss the Speaker and Secretary.

## CONCLUSION

For the reasons discussed above, the Speaker and Secretary respectfully request that the Court dismiss the Complaint with prejudice. The Speaker and Secretary request such other and further relief as the Court deems appropriate under the circumstances.

Date: August 26, 2019.

Respectfully submitted,

**PHILIP GUNN, IN HIS OFFICIAL CAPACITY AS THE SPEAKER OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES, AND DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY AS THE MISSISSIPPI SECRETARY OF STATE**

*/s/ Trey Jones*
Trey Jones
One of the Attorneys for Defendants

William Trey Jones, III (MSB #99185)
tjones@brunini.com
Cody C. Bailey (MSB #103718)
cbailey@brunini.com
Jacob A. Bradley (MSB #105541)
jbradley@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

**CERTIFICATE OF SERVICE**

I, Trey Jones, hereby certify that on August 26, 2019, I caused the foregoing pleading to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and registered participants.

*/s/ Trey Jones*
Trey Jones
One of the Attorneys for Defendants

11